IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
April 15, 2005 Session
Heard at Pulaski[1]


IN RE C.K.G., C.A.G., & C.L.G.


**Appeal by permission from the Court of Appeals, Middle Section**
**Juvenile Court of Williamson County**
**No. 38410    Lonnie R. Hoover, Judge**

---

**No. M2003-01320-SC-R11-CV - Filed October 6, 2005**

---

ADOLPHO A. BIRCH, J., dissenting.

Because my views differ from the majority opinion, I respectfully dissent. At the outset, I am convicted that any resolution reached in this case will be temporary only–a stop-gap solution usable for this case alone, pending legislative action, as the law accelerates to catch up with the rapidly evolving technology of reproduction and its consequences. Still, unless our legislature acts, I fear that this *narrowly tailored* solution designed for this specific case will be used as precedent for other cases involving reproductive technology.

My colleagues have, nevertheless, cobbled together a resolution which would appear at first glance to be just and reasonable. But in so doing, they have side-stepped a clear legislative mandate: the statutory definition of "parent."

The operative facts that this case presents are unusual, though not unique. In short, we have a biological father (hereinafter "Dr. G.") and a gestational host (hereinafter "Ms. C.").[2] The children resulting from this procedure have the father's DNA, but have no DNA from the gestational host. Yet, she desires to be declared the children's legal mother and to receive child support from the children's father.

The majority has chosen to use a totality of the circumstances analysis to validate the plaintiff's status in this case. Although the majority declines to adopt either an intent test or a genetic test, they rely heavily upon intent as a primary factor. The intent test has been soundly

---

[1]Oral argument in this case was heard April 15, 2005, in Pulaski, Giles County, Tennessee, as part of this Court's S.C.A.L.E.S. (**S**upreme **C**ourt **A**dvancing **L**egal **E**ducation for **S**tudents) project.

[2]Presumably, the biological mother agreed to surrender her parental rights prior to the children's birth.

criticized. Thus, I submit that using intent even as just a factor for establishing parentage, is unwieldy, subjective, and questionable. At least three reasons have been noted why a test based on intent should be rejected. Ardis L. Campbell, Annotation, <u>Determination of Status as Legal or Natural Parents in Contested Surrogacy Births</u>, 77 A.L.R. 5th 567, § 3[c] (2004) (citing <u>Belsito v. Clark</u>, 67 Ohio Misc. 2d 54 (C.P. 1994)). These same criticisms also apply when intent is used solely as a factor. First, it is difficult to apply the "Johnson test,"[3] an intent test, because proof is hard to ascertain, especially when each party purports an intention to procreate and raise the child. <u>Id.</u> Second, public policy areas of "procreation and parentage, which involve values that are basic to society," are not supported by this test in established areas such as "[the] surrender of parental rights [by agreement], the best interests of children, [and the] stability in the child-parent relationship." <u>Id.</u> Third, this test does not completely recognize the right of the genetic-provider to decide whether or not to exercise fundamental rights–procreation and parental rights. <u>Id.</u> Furthermore, a party's intent may change after conception, through gestation, and after birth.

Other courts have looked to the parties' intent expressed in surrogacy contracts and agreements, but only after first utilizing applicable statutes. <u>See</u> Campbell, <u>supra</u>, § 3[a]. However, the present case is not amenable to such analysis because our statutes expressly define "parent." "Parent" is limited to biological, legal and adoptive parents.[4] Tenn. Code Ann. §§ 36-2-302, 36-1-102(36) (2001 & Supp. 2004).

The majority also places considerable weight on gestation, noting the historical link between gestation and genetics. Historically, there was no separation between the gestational host and the genetic provider; thus, the gestational host and genetic provider were one in the same. Now, technology has evolved as we can see in the instant case. It is because of this separation we now have this and other disputes regarding parentage. Therefore, because of the technological advances in reproduction I believe the majority's reliance on the historical binding of gestation to genetics is not applicable to this case and should not be used. Furthermore, the majority admits that gestation is conspicuously missing from the statutes. Therefore, we should conspicuously leave gestation out of consideration in determining parentage.

I would resolve this case through genetics. It is scientific, certain, and has found acceptance in several courts that have addressed the issue.[5] Furthermore, it is easier to apply. Moreover, this

---

[3]In <u>Johnson v. Calvert</u>, the intent to procreate test was used by the court by looking at the parties' intentions as embodied in the surrogacy agreement and held that from the outset the genetic mother intended to be the child's mother. 851 P.2d 776, 782-87 (Cal. 1993).

[4]"Father," "mother," and "parent" do not include a biological parent whose parental rights have been terminated for a child whose parentage is at issue. Tenn. Code. Ann. § 36-2-302 (2004).

[5]Several courts have held that the individual providing the genetic imprint is the "parent." Campbell, <u>supra</u>, § 4 (citing <u>In re Marriage of Moschetta</u>, 30 Cal. Rptr. 2d 893 (Cal. Ct. App. 1994) <u>as modified</u>, (June 30, 1994); <u>Robert B. v. Susan B.</u>, 135 Cal. Rptr. 2d 785 (Cal. Ct. App. 2003); <u>Arredondo by Arredondo v. Nodelman</u>, 622 N.Y.S.2d 181 (N.Y. Sup. Ct. 1994); <u>Doe v. New York City Bd. of Health</u>, 782 N.Y.S.2d 180 (N.Y. Sup. Ct. 2004); <u>Turchyn v. Cornelius</u>, 1999 WL 689202 (Ohio Ct. App. 1999)); <u>see also</u> <u>Belsito v. Clark</u>, 644 N.E.2d 760 (Ct. C.P. Ohio 1994).

is the test that our legislature has already ordained by providing that parentage may be established by either biology or adoption.  Id.  Indeed, "courts have looked at genetics as the primary basis to determine who is the parent" based on the importance of historical precedence and common ancestry. Campbell, supra, § 2[a].

The plaintiff is, a fortiori, a non-parent, at least as is determined by the statutory definitions of "mother" and "parent" as one who has biological ties to the child(ren).  See Tenn. Code Ann. §§ 36-2-302(4), 36-1-102(10), (28),(36) (2001 & Supp. 2004).

The majority suggests that the statutory provisions defining "parents" (which relate specifically to paternity and adoption) do not apply to the case under review.  While the paternity statute clearly contemplates establishing paternity (identification of a child's father), section 36-2-301 expressly states its purpose:  "This chapter provides a single cause of action to *establish parentage* of children other than establishment by adoption pursuant to chapter 1 of this title, or by acknowledgment of parentage pursuant to § 68-3-203(g), § 68-3-302 or § 68-3-305(b)." Tenn. Code Ann. § 36-2-301 (2001 and Supp. 2004) (emphasis added).  This statute establishing parentage includes a definition of mother.  Tenn. Code Ann. § 36-2-302(4) (2001 and Supp. 2004).

Moreover, our artificial insemination statute, which legitimizes children born as a result of the procedure, does not apply to the case at hand because the parties were never married.[6]  Tenn. Code Ann. § 68-3-306 (2001 & Supp. 2004).  The majority seems to believe that this statute assumes the existence of marriage.  However, the statute only applies to those who are married.  Marriage confers certain benefits on those who choose it.  For example, if a couple is married, there is a presumption of parentage (the husband is presumed father) where the wife conceives naturally.  See Tenn. Code Ann. § 36-2-304 (2001 & Supp. 2004).  The benefit does not assume the existence of the relationship like the majority asserts, but the relationship must first exist before the benefit is available.

By inquiring–"Who is the mother of these children?"–the majority raises the specter of the "motherless child"; that is, the impression has been given that the children will have no mother unless we find a way to confer those rights upon Ms. C.  Such is not the case.  The children do indeed have a mother.  It just happens that the mother's identity here is, as is sometimes the case, unknown.  The real question which should have been considered and answered by this court is whether the plaintiff is the children's legal mother.  The answer is apparently no.

The majority, in placing Ms. C. on equal legal footing with the children's biological and legal father, Dr. G., in my view, is an exercise of largesse gone too far awry.  We are to apply the law, and in the process, we are neither to unduly restrict or expand statutes' coverage.  See Premium Fin. Corp. of Am. v. Crump Ins. Servs. of Memphis, Inc., 978 S.W.2d 91, 93 (Tenn. 1998).  In my view,

---

[6]If the parties had married, the plaintiff could contend that she was the legal mother of the children.

the majority reached beyond existing law to produce a palatable result. This overreaching is not necessary in my opinion. Thus, this case should be resolved under the law as it currently exists today. Tennessee statutes do not use gestation or intent to confer parental status, instead genetics, marriage and adoption are the routes available. Therefore, by reviewing and analyzing the Tennessee statutes which are based on biology, Ms. C. is not the parent nor is she the legal mother of the children for purposes of this case, and she has no legal standing to sue for custody or support as a parent. Adoption, nevertheless, remains an option.

We, as interpreters of the law, not makers of the law, are powerless, in my view, to reach a different resolution. Accordingly, I would reverse the judgment of the Court of Appeals and remand the cause to the trial court where it would proceed as a contest between a parent and a non-parent under settled Tennessee authority.

_____
ADOLPHO A. BIRCH, JR.